IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ABDUS-SABUR IBN QUEEN,**
**fka SAMUEL R. QUEEN, JR.,**

        **Petitioner,**

    **v.**                                      **CIVIL ACTION NO. 2:09cv95**
                                                      **(Judge Maxwell)**

**JAMES N. CROSS, Warden,**

        **Respondent.**

**REPORT AND RECOMMENDATION**

**I. BACKGROUND**

On August 7, 2009, the *pro se* petitioner, an inmate at USP Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order from this court directing "the Bureau of Prisons ["BOP"] to rescind its order upon petitioner for the loss of good conduct credits of 82 days disallowed due to prison officials failure to follow policy during disciplinary process." (Doc. 1, p. 8). On August 14, 2009, the petitioner paid the required $5.00 filing fee. By Order entered September 3, 2009, the court directed the respondent to show cause why the petition should not be granted. On November 2, 2009, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On November 3, 2009, a Roseboro Notice was issued and on January 21, 2010, the petitioner filed a Motion to Strike Respondent's Response to Show Cause Order, or in the alternative, Motion to Amend the Petition for Writ of Habeas Corpus.

**II. FACTS**

1

The petitioner is a federal inmate committed to the BOP serving a 360 month sentence with a five year term of supervised release for violating 21 U.S.C. § 846, Possession with intent to Distribute a Substance Containing Heroin. (Doc. 14-1, p. 5). The petitioner's current projected release date is January 24, 2020. (Doc. 14-1, p. 6).

On August 17, 2001, the petitioner arrived at the United States Penitentiary located in Leavenworth, Kansas ("USP Leavenworth'). (Doc. 14-1, p. 3). On December 20, 2004, staff observed the petitioner pushing two homemade weapons out of his cell window, then plug the hole in the window with his shirt. Staff recovered the weapons, measuring 13" and 19" in length and which appeared to have been made from food trays. Staff then wrote an incident report charging the petitioner with violation of Prohibited Act 104, Possession of a Weapon, and delivered the incident report to him that same day. (Doc. 14-1, p. 9). Further processing of the incident was suspended because the matter was referred to the FBI for possible criminal charges and prosecution. (Doc. 14-1, p. 10). The FBI declined prosecution, released the case back to the BOP, and a Unit Disciplinary Committee hearing was held on January 11, 2005. (Doc. 14-1, p. 12). A Disciplinary Hearing Officer ("DHO") conducted a hearing on January 14, 2005. After considering all the evidence, the DHO found that the petitioner did commit the prohibited act of possession of a weapon. He sanctioned the petitioner to the loss of 27 days of GCT, 30 days Disciplinary Segregation and 45 days Loss of Telephone and Commissary privileges. (Doc. 14-1, pp. 7-8).

On December 22, 2004, staff wrote an incident report charging the petitioner with Prohibited Act 204, Threatening, and Prohibited Act 307, Refusing an Order. (Doc. 14-1, p. 16). A copy was delivered to the petitioner on December 23, 2004. (Id.). On December 28, 2004, the UDC held a preliminary hearing and referred the charges to the DHO for further disposition. (Id.). On January 3, 2005, the DHO conducted a hearing and found that the petitioner had committed the prohibited

2

acts as charged, as well as Code 312, Insolence, and sanctioned him to a total of 55 days of disallowed GCT. (Doc. 14-1, pp. 14- 15).

On September 5, 2005, the petitioner was transferred to the United States Penitentiary, Marion, Illinois. On May 8, 2006, he filed a habeas petition in the United States District Court for the District of Kansas, challenging the DHO actions.[1] On January 30, 2007, the petition was denied and dismissed for two reasons. First, because it did not appear that the petitioner had exhausted his administrative remedies. Second, the court found that it was clear that the petitioner was afforded due process in the complained of disciplinary actions. (Doc. 14-3, p. 3).

On September 12, 2006, the petitioner was transferred to the United States Penitentiary, Allenwood, Pennsylvania. The petition filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania challenging the finding of the DHO on the charge of possessing a weapon. The petition was dismissed as a successive petition on December 3, 2007. (Doc. 14-8).

## III. CONTENTIONS OF THE PARTIES

In the instant petition, the petitioner's sole challenge to both DHO findings is that the discipline process was defective because the UDC committee staff were allegedly not UDC certified.

The respondent counters that the petition is successive and should be dismissed an abuse of writ. In addition, the respondent argues that the petitioner's challenge premised on the UDC's lack of training certification is without merit. Finally, the respondent argues that the petitioner received

---

[1] The petitioner commenced the action in Kansas while incarcerated in Marion, Illinois, and at the time the Court rendered its decision he was incarcerated in White Deer, Pennsylvania. After recognizing that the petition should have been filed in Illinois, the Court noted that the Tenth Circuit has determined that "a court is authorized to consider the consequence of a transfer by taking 'a [quick look] at the merits to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." See Haugh v. Booker, 210 F.3d 1147 (10th Cir. 2000). (Doc. 14-3, pp 2-3).

3

all the due process required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).

In his reply to the response, the petitioner argues that the respondent has presented "redacted" files which merely provide the courses in which the named prison officials have been enrolled, but these documents do not provide proof that the officials actually passed the course. In addition, the petitioner argues that this is not a second or successive petition because he is not challenging the disciplinary process, but rather, the lawfulness of his confinement through the revocation of good time credits. Finally, the petitioner requests that "due to the deficiencies in his pleading, which the court failed to give him notice of, he should be freely given the right to amend the complaint before the court grants dismissal." (Doc. 20, p. 7).

## IV. **STANDARD OF REVIEW**

### A. **Summary Judgment**[2]

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit

---

[2]Although the respondent has asked that his Motion be treated under both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, in the motion, he clearly asks that the Court to rely on documents and declarations attached as exhibits. When matters outside the pleadings are presented to a court on a motion to dismiss, and the court does not exclude those matters, the motion must be treated as a motion for summary judgment rather than a 12(b)(6) motion,

Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from

staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff. More specifically, the petitioner received written notice of the charges more than 24 hours before the hearing, had an opportunity to present witnesses and evidence, received written statements of the evidence relied on and reasons for the disciplinary action, and there was 'some evidence to support the hearing examiner's decision.[3]

To the extent that the petition argues for the first time in the instant petition that he was denied due process because the UDC members were not certified, the same is without merit. BOP Policy Statement 5270.07 does indeed provided that: "[a] staff member may not sit on the Unit Discipline Counsel (UDC) without first successfully completing the self-study program for UDC certification. The program involves completion of a series of training modules. Each warden shall select at least one UDC Trainer to review and monitor the progress of staff participating in the self-study program."

In support of his Motion to Dismiss, or in the Alternative, for Summary Judgment, the respondent has submitted a document which appears to indicate that the UDC members involved in this matter were all certified before the petitioner was charged with the two rule violations pertaining

---

[3]The United States District Court for the District of Kansas went through an exhaustive review of the due process requirement of Wolff and concluded with specificity that the petitioner had, indeed, received those requirements. See Queen v. Nalley, 2007 WL 316984, at *2 (D. Kan. Jan. 30, 2007)(unpublished). The district court's decision was affirmed by the Tenth Circuit on December 4, 2007. See (Doc. 14-6). Accordingly, the undersigned has not set forth with detail the dates, documents and findings by the DHO that support the conclusion that petitioner received his due process guarantees.

to this matter. (Doc. 14-2). However to the extent that said exhibit does not "prove" that the UDC member successfully completed the program of self-study, but merely were enrolled, the fact that they may not have all been certified does not present a denial of the petitioner's due process guarantees. See Griffin v. Ebbert, 2008 WL 2036817 (M.D. Pa. 2008) (A prison's failure to comply with its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under Wolff). As previously noted, the petitioner was clearly provided with the process he is due under Wolff.

Finally, the undersigned recognizes that the petitioner argues in Motion to Strike the respondent's response that he is not challenging the disciplinary charges, but rather, that he "challenges the lawfulness of his continued confinement through denial and improper revocation of good time credits." (Doc. 20, p. 2). However, this is a distinction without a difference. The petitioner lost his good time credits as a result of a disciplinary proceeding. The only challenge he can make is that the disciplinary proceeding did not comply with Wolff. Clearly it did, and the petitioner has failed to establish a basis for granting his petition.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that respondent's Motion to Dismiss, or in the Alternative, for Summary Judgement (Doc. 13) be **GRANTED**, the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**, and the petitioner's Motion to Strike or in the Alternative Request/Motion to Amend (Doc. 20) be **DENIED**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 2-2-10

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE